STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-8663

July 25, 2019

**BY ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
    Southern District of New York
Daniel Patrick Moynihan United States
    Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  *Steck v. DiNapoli, et al.*, 19-cv-05015 (PKC)

Dear Judge Castel:

This Office represents individual defendants Thomas P. DiNapoli, H. Carl McCall, Scott Stringer and William C. Thompson, Jr., (the "Individual Defendants") and The State of New York (collectively "Defendants").  In accordance with Rule 3.A. of Your Honor's Individual Practices, I write to request a pre-motion conference with respect to Defendants' anticipated motion to dismiss plaintiffs' complaint, filed May 30, 2019 ("Compl.").  The Initial Pretrial Conference in this case is presently scheduled for September 3, 2019.

I.      **Background of the Case.**

Plaintiffs are current members of the New York State Assembly, their spouses or, in the case of plaintiff Joseph E. O'Brien, a resident of the Assembly District represented by plaintiff Phillip G. Steck.  Plaintiffs allege in this action, purportedly brought pursuant to 42 U.S.C. § 1983, that the "outside income" limitations recommended by the New York State Committee on Legislative and Executive Compensation (the "Committee") violate their constitutional rights.

The Individual Defendants were the members of the Committee.[1]  Defendant DiNapoli is the current Comptroller of the State of New York; defendant McCall is, among other things, a former New York State Comptroller, New York State Senator, Ambassador to the United

---

[1] Pursuant to the statute which created the Committee, the Committee ceased to exist upon issuance of its report.

Nations and Chairman of the State University of New York Board of Trustees; defendant Stringer is the current New York City Comptroller; and defendant Thompson is the Chairman of the Board of Trustees of The City University of New York and, among other things, a former New York City Comptroller.

The Committee was created pursuant to Part HHH of Chapter 59 of the New York State laws of 2018 ("Part HHH").  Under Part HHH,  the Committee's purpose was to "examine, evaluate and make recommendations with respect to adequate levels of compensation, non-salary benefits, and allowances pursuant to section 5-a of the legislative law, for members of the legislature, statewide elected officials, and those state officers referred to in section 169 of the executive law."  The Legislature directed the Committee to hold at least one public hearing at which members of the public would have an opportunity to comment, to "make a report to the governor and the legislature of its findings, conclusions, determinations and recommendations," and to submit the report by December 10, 2018.

The Legislature specified that each recommendation by the Committee "shall have the force of law, and shall supersede, where appropriate, inconsistent provisions of section 169 of the executive law, and sections 5 and 5-a of the legislative law, *unless modified or abrogated by statute prior to January first of the year as to which such determination applies to legislative and executive compensation*."  (Emphasis added.)  Although the New York State Legislature, of which plaintiffs Steck, Abinanti and McDonald are members of the New York State Assembly, had the authority and opportunity to "modify or abrogate" the Committee's recommendations, it did not do so, and so the Committee's recommendations began to take effect on January 1, 2019.

The Committee made several recommendations, which are set forth in full detail in its Report, issued December 10, 2018.  (*See* Exh. A.)  First, the Committee recommended a salary increase for state Legislators, beginning with an increase from $79,500 to $110,000 as of January 1, 2019.  The Committee also recommended that, *beginning January 1, 2020*, outside income for Legislators should be restricted to a maximum of 15% of base salary, or $18,000, and prohibited where a fiduciary relationship exists.

Plaintiffs' claims in this case challenge the Committee's recommendations restricting the "outside income" of Legislators, which are *not* yet effective.  Plaintiffs do not challenge the salary increases that the Committee recommended (the first of which is already effective).

## II.     Prior, Pending Litigation in State Court
## Challenging the "Outside Income" Restrictions.

Two other challenges to the "outside income" restrictions are currently pending in state court:  (1) *Delgado, et al. v. State of New York, et al.*, Index No. 907537/2018 (Sup. Ct. Albany Cty.)[2], and (2) *Assemblyman William Barclay, et al. v. New York State Committee on Legislative*

---

[2] *Delgado* is an action brought by four "New York taxpayers," one of whom also is an Assembly member, against the State of New York and Mr. DiNapoli, in his capacity as Comptroller of the State of New York.  Plaintiffs seek, among other things, declaratory judgments declaring "unlawful, invalid, and unenforceable" Part HHH regarding legislative and statewide elected official compensation and the determinations in the Committee's report regarding compensation for legislators and state officers, as well as an injunction enjoining "disbursement of any state funds

*and Executive Compensation, et al.*, Index No. 901837/2019 (Sup. Ct. Albany Cty.)[3]. Not only are there two prior challenges to the same "outside income" restrictions that are at issue in this case, but by Decision/Judgment dated June 7, 2019, the court in *Delgado* determined that the "'recommendations' effective January 1, 2020 and beyond that contemplate prohibited activities and limitations on outside income are null and void." (*See* Exh. B, at 18.) Although the defendants in *Delgado* filed a Notice of Appeal on July 15, 2019, no stay of the Decision/Judgment has been sought or obtained.

## III.  Dismissal of Plaintiffs' Complaint in this Action Is Appropriate.

For numerous reasons, only some of which are outlined below, plaintiffs' Complaint and the seven "Counts" asserted therein should be dismissed in their entirety.

### A.  This Action Should Be Dismissed or, at the Very Least, Stayed, Because the Decision in *Delgado* Has Rendered It Moot.

As plaintiffs' counsel, Phillip G. Steck, Esq., admitted during a telephone conversation with me on June 24, 2019, the June 7, 2019 Decision in *Delgado* renders this action moot. Defendants therefore request that this action be dismissed or, at the very least, stayed pending further developments in *Delgado*.

### B.  Given the Pendency of Similar Actions in New York State Court, this Court Should Defer to the State Court Proceedings and Abstain from Exercising Jurisdiction Here.

Principles of comity and judicial economy warrant that this Court abstain from exercising jurisdiction in this case or, at the very least, stay this case pending further proceedings in *Delgado* and *Barclay*. Where similar actions are concurrently pending in state and federal court, a federal district court may, in the interests of judicial economy and sound judicial administration, defer to the state action and abstain from exercising its jurisdiction. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15 (1983). This authority to dismiss a federal case in favor of a concurrent state court action rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conserv. Dist. v. U.S.,* 424 U.S. 800, 817 (1976). In deciding whether to abstain pursuant to *Colorado River*, courts consider six factors, including whether staying or dismissing the federal action will avoid piecemeal litigation; the

---

regarding compensation for legislators, statewide elected officials and state officers referred to in section 169 of the executive law as determined by the [C]ommittee . . . ."

[3] *Barclay* is a "hybrid Article 78/Declaratory judgment proceeding" brought by nine New York assemblymen and two senators against the Committee and defendants DiNapoli, McCall, Stringer and Thompson "in their capacities as members" of the Committee. The Petition and Complaint in *Barclay* alleges that, in recommending the "outside income" restrictions the Committee exceeded its statutory authority, acted in violation of law, and "infringed upon Petitioners' rights guaranteed by the free speech and assembly provisions of the United States Constitution and the Equal Protection and Due Process provisions of the United States and New York State Constitutions." Petition, filed March 29, 2019, ¶¶ 9, 10.

order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; and whether the state procedures are adequate to protect the plaintiff's federal rights. Although no single factor is dispositive, the most important factor driving *Colorado River* and its progeny is the clear federal policy of avoiding piecemeal adjudication. *See, e.g., Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 210–211 (2d Cir. 1985) (noting that, "[a]s in *Colorado River,* the danger of piecemeal litigation is the paramount consideration"); *Abe v. New York University,* No. 14-cv-9323 (RJS), 2016 WL 1275661, at *7 (S.D.N.Y. Mar. 30, 2016).

Here, not only were both state court cases commenced before this action, but the state court proceedings have advanced far more than in this forum. Indeed, as stated above, the *Delgado* court issued a decision and final judgment on June 7, 2019, declaring the "outside income" restrictions about which plaintiffs complain in this case "null and void." (*See* Exh. B, at 18.) Further, in *Barclay,* a motion to dismiss has been fully briefed, and is *sub judice*. In these circumstances, and because abstention would avoid piecemeal and duplicative adjudication, abstention is proper in this case.

    **C.**    **The Individual Defendants Are Entitled to Qualified Immunity
            and They Therefore Should Be Dismissed from This Case.**

Qualified immunity "'is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howard*s, 566 U.S. 658, 664 (2012).

In this case, plaintiffs have made no factual allegation from which this Court could conclude that *any* of the Individual Defendants did not reasonably believe that he was acting lawfully. Accordingly, plaintiffs' claims against the Individual Defendants should be dismissed in their entirety.

    **D.**    **Because the "Outside Income" Restrictions at Issue Do Not Violate Plaintiffs'
            First Amendment Rights, Count I of the Complaint Should Be Dismissed**

Count I of the Complaint, titled "Violation of the First Amendment," and relying on *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310 (2009), asserts that the "outside income" restrictions violate plaintiffs' First Amendment rights. In *Citizens United,* the Supreme Court held that a federal statute barring corporations from using their general treasury funds to make independent expenditures for "electioneering communications" within 30 days of a primary election or 60 days of a general election violated the First Amendment. Of course, this case has nothing to do with "electioneering communications" or with "core political speech," and thus the concerns enumerated in *Citizens United* have no application here. Count I of the Complaint fails to state a claim for relief and should be dismissed.

E.     **Because Plaintiffs Do Not Allege a "Suspect Class" or "Similarly Situated"**
       **Parties, Count II Fails to State a Claim for Relief and Should Be Dismissed.**

Count II of the Complaint, titled "Violation of Plaintiffs' Right to Equal Protection of the Law," asserts that the "outside income" restrictions impermissibly differentiate, and thus discriminate, between professions such as physicians, on the one hand, and lawyers and pharmacists, on the other. But such professionals are not members of a "suspect class," and thus the alleged discrimination is not reviewed under a heightened scrutiny standard. Further, plaintiffs fail sufficiently to allege, as they must, that physicians, lawyers and pharmacists are "similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Indeed, in order to determine that these groups of professionals are "similarly situated," they must be considered "'*prima facie* identical' to the persons alleged to receive irrationally different treatment." *See Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018). Further, "[w]hen a statute or regulatory regime imposes different classifications or regulatory burdens on groups of regulated participants, rational basis review contemplates 'a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it.'" *Id*. at 49, quoting *F.C.C. v. Beach Commc'ns*, 307, 314-15 (1993). Because plaintiffs' allegations are insufficient to show that physicians, lawyers or pharmacists are part of a suspect class, or that they are "*prima facie* identical," and plaintiffs cannot meet their burden to "negat[e] every conceivable basis which might support" the distinctions between physicians, lawyers and pharmacists, Count II fails to state a claim for relief and should be dismissed.

F.     **Count III of the Complaint Should Be Dismissed Because It Fails**
       **to Allege the Conditional Loss of an Underlying Constitutional Right.**

Count III of the Complaint, titled "Placing Unconstitutional Conditions on the Receipt of Government Benefits," asserts that the "outside income" restrictions effectively force plaintiffs to forfeit their constitutional rights in order to retain their positions as legislators in the New York Assembly. Plaintiffs allege that "[b]y enacting and/or by enforcing the . . . outside income limitations on plaintiffs as a condition [sic] their continuing to hold legislative office and receive the salary afforded thereto, by tying pay increases to an on-time budget, and by providing that legislators are not paid unless an on-time budget is passed, the State of New York has coercively conditioned each plaintiff's receipt of these benefits on either forgoing his First Amendment right to speak as a citizen and to have others hear his voice or forgoing his constitutionally protected property interests in his law practice, legal partnership, pharmacy license and business . . . ." (Compl. ¶ 95.)

Contrary to plaintiffs' assertion, however, a legislator has no "personal right" to his vote; indeed, a legislator's vote "is not personal to the legislator but belongs to the people." *See Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 125-26 (2011). In the absence of any conditional forfeiture of an underlying constitutional right, Count III of the Complaint fails to state a claim and should be dismissed.

**G.**     **Counts IV and VI Fail to State a Claim for Violation of
           Plaintiffs' Alleged Due Process Rights Because Plaintiffs
           Were Provided Meaningful Notice and an Opportunity to Be Heard.**

The Complaint contains two alleged due process claims:  Count IV, titled "Violation of
Plaintiff's Right Not to Have Property Taken Without Due Process of Law," and Count VI, titled
"Unlawful Rule-Making in Violation of Plaintiff's Right Not to Have Property Taken Without
Due Process of Law."  As a matter of law, both of these claims are invalid and should be
dismissed.  The fundamental requirement of due process is the opportunity to be heard "at a
meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)
(quotations omitted). Both of these requirements were satisfied here.  Indeed, because plaintiffs
Steck, Abinanti and McDonald were and are members of the New York State Assembly, they not
only participated in the creation of the Committee through the passage of Part HHH,[4] but they
had the opportunity to vote to reject or modify the Committee's recommendations set forth in the
Committee's Report before they became law.  Because plaintiffs thus had more than the minimal
procedural guarantees provided to citizens under the due process clause, Count IV should be
dismissed. *Id.*

Plaintiffs' due process claim under Count VI is based on the assertion that they were
impermissibly deprived of property without adequate due process because of an unlawful rule-
making process.  But, as stated above, plaintiffs Steck, Abinanti and McDonald were not only
part of the process by which the Committee was created and pursuant to which its
recommendations became law, but they had the opportunity to vote against the Committee's
recommendations once the Committee's Report was issued.  Plaintiffs' rule-making due process
claim is therefore invalid and should be dismissed.

**H.**     **Count V of the Complaint, Based on an Alleged Violation of the
           Constitutional Prohibition on the Impairment of Contracts,
           Fails to State a Claim for Relief and Should Be Dismissed.**

Count V of the Complaint, titled "Violation of the Constitutional Prohibition on the
Impairment of Contracts," erroneously relies on the contention that plaintiffs' alleged contractual
right to earn "outside income" became "vested" under Article III, § 6 of the New York State
Constitution, when "plaintiffs were elected to serve a two-year term in the New York State
Assembly."  (Compl. ¶ 110.)  Contrary to plaintiffs' assertion, however, one elected to hold a
public office for a set term does *not* have any contractual right to either that office or its
associated salary. *See*, *e.g., Dodge v. Board of Ed. of City of Chicago*, 302 U.S. 74, 78-79 (1937)
("[A]n act merely fixing salaries of officers creates no contract in their favor, and the
compensation named may be altered at the will of the Legislature."). Without an underlying
contractual relationship, plaintiffs cannot -- and fail to -- allege the threshold consideration for a
claim under Article I, section 10, clause 1 of the United States Constitution.  *See Buffalo
Teachers Fed'n v. Tobe*, 464 F.3d 362, 368 (2d Cir. 2006), *cert. denied*, 127 S.Ct. 2133 (2007).

Moreover, even if Article III, section 6, of the New York State Constitution, which states

---

[4] In fact, plaintiffs Steck, Abinanti and McDonald all voted in favor of the passage of the bill that included Part
HHH.  (*See* Exh. C.)

that legislators have a right to a salary for "his or her services" as a legislator, did create such a contractual or vested right, plaintiffs' impairment of contracts claim still fails because plaintiffs' outside income is not derived from "his or her services" in the legislature.  Accordingly, Count V of the Complaint fails to state a claim for relief and should be dismissed.

> **I.      Count VII of the Complaint, Based on the Alleged Contravention of the the Constitutional Provision Guarantying a Republican Form of Government, Is Non-Justiciable and Therefore Should Be Dismissed.**

Finally, Count VII of the Complaint**,** brought pursuant to the so-called Guaranty Clause, should be dismissed because it is non-justiciable.  *See Highland Farms Dairy v. Agnew*, 300 U.S. 608, 612 (1937).

For all the above reasons, Defendants request a pre-motion conference with respect to their' anticipated motion for an order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing plaintiff's Complaint in its entirety.

In accordance with Rule 3.A.(III) of Your Honor's Individual Practices, Defendants propose to serve their initial motion papers 30 days after any pre-motion conference scheduled by the Court.

Respectfully yours,

*/s/ Mark E. Klein*

Mark E. Klein
Assistant Attorney General

cc:  Plaintiffs' counsel (by ECF)